[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On February 2, 2000, the plaintiff brought this action with a return date of February 22, 2000 seeking a dissolution of marriage and other relief and thence to later dates when the defendant appeared through counsel. Both parties appeared for a limited contested trial on August 21, 22, 23, 24 and October 18, 2001.
The parties were married on May 11, 1991 and both have resided in the State of Connecticut since that time. The parties have been separated since the end of December 1999. There are no children issue of this marriage. The marital residence since 1994 has been 12 Church Street, Roxbury, Connecticut.
The court heard considerable testimony relating to the issue of the causes of the breakdown of the marriage. The plaintiff presented this evidence to support her claim that the defendant was solely to blame for the breakdown. Specifically, she testified that it was the defendant's betrayal of her and "all she believed in," as well as his physical violence. The defendant admitted to having an extramarital affair and to visiting pornographic websites. He denied any physical violence to the plaintiff. Having considered the testimony of each party on this issue in the context of their entire testimony, the court discounts the alleged physical violence. While the court does not agree with the plaintiff's position that she is free of fault in this relationship and its demise, it does find that the defendant's infidelity was a major factor in the breakdown of the marriage. The court finds that the marriage has broken down irretrievably. CT Page 16401
Both parties are educated and accomplished professionals in good health. The plaintiff, who is 53 years old, holds a B.A. in civil engineering and works as an independent consultant in solid waste management for developing countries throughout the world, especially in Africa and Asia. At one point during the marriage she traveled up to 175 days a year. During the final years of the marriage, she reduced her work travel and formed a corporation now operating to produce herbal remedies to animals, and she began to breed poodles. All three of the plaintiff's endeavors are income producing and growing, and all three are operated out of the marital home. At the time of the hearing, the plaintiff's most current financial affidavit shows a net weekly earned income of $796.00 which the court finds as her present earned income.
The defendant is a tenured professor of medicine at the University of Connecticut Health Center and is 59 years old. His financial affidavit reflects a net weekly income of $2,458.45, which the court so finds.
The parties were married one month after the dissolution of the defendant's prior marriage. They had been living together during the pendency of that divorce. For one half of the parties' ten year marriage, the defendant was obligated to pay periodic alimony to his former wife, as well as private school and Ivy League college tuition for his son from that marriage. There was also debt brought into this marriage from the defendant's prior marriage. The plaintiff argues that she should be given credit for assuming these obligations with the defendant, but the court is not convinced. In light of the plaintiff's relationship with the defendant prior to the marriage, as well as her obvious intelligence and education, the court finds that the plaintiff entered this marriage with full understanding and acceptance of the defendant's obligations as part of her commitment.
The significant marital assets consist of the marital residence and the defendant's TIAA CREF deferred compensation plan. The values of both these assets as marital are in dispute. As for the defendant's TIAA CREF plan, the parties stipulated at the time of trial to its total value being $888,426.00. The court finds further that based on credible evidence the value at the date of the marriage was $286,057.00. The defendant argues that based on the testimony of his expert witness, Geraldine Ann Bowen, an investment advisor, and the court's exercise of equitable powers, only $303,205 should be considered marital asset. He bases this on an argument that the plaintiff should not be entitled to claim that part of the plan's value that is attributed to growth with no contributions during the marriage. The court is not persuaded that a proper use of its equitable powers would be to reduce the value of this marital asset in such a manner. The court finds that the defendant's TIAA CREF plan is a marital CT Page 16402 asset in the amount of its value at the time of judgment, approximately $888,426.00, less its value at the time of marriage, $286,057.00, for a value of approximately $602,369.00.
The court heard testimony from four experts as to the fair market value of the marital home in Roxbury. Certain facts are not in dispute. The house sits on 4.16 acres; it is more than two hundred years old and is approximately 3,510 square feet. There is a two-story barn on the property used in part to stable horses[1]. The parties bought the property in 1994 for $550,000.00. In late 1999, for purposes of refinancing, the house was appraised at $800,000.00. There is at the time of judgment approximately $590,500.00 in encumbrances. The plaintiff presented testimony from Robert J. Nocera, a licensed real estate appraiser, who presented a written appraisal dated May 22, 2001, and testified to a fair market value of $750,000. The plaintiff also called Walter Moss, a licensed real estate appraiser, whose written appraisal was dated May 3, 2001 and who testified to a fair market value of $700,000.00.
The defendant presented testimony from David Jalbert, a licensed real estate appraiser, who submitted a written appraisal dated June 19, 2001 and who testified that the fair market value was $1,100,000.00. The defendant also called Joseph LaBue, a licensed real estate appraiser, who presented a written appraisal dated March 3, 2001 and who testified to a fair market value of $1,125,000.00.
 "In assessing the value of . . . property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard."
(Citations omitted) Turgeon v. Turgeon, 190 Conn. 269, 274 (1983); See also Krafick v. Krafick, 234 Conn. 783, 799-800 (1995).
The court has considered the testimony of all four appraisers applying the above law from Turgeon. While all four experts used the sales approach, using some of the same comparables, they arrived at dramatically divergent values. Because of this divergence, the court discounted much CT Page 16403 of their testimony. The most credible evidence is found in the refinancing document dated 1999, showing a value of $800,000.00. The plaintiff's appraiser Nocera testified credibly to an approximately three percent increase in value per year. Based on this evidence, the court finds the fair market value of the marital home to be $848,720.00.
The court further finds that a 60/40 split of the marital assets with the plaintiff receiving the larger percentage is fair under all the circumstances including the cause of the breakdown. The court also finds that time limited alimony should be awarded in light of the plaintiff's present and future earning capacity, and her financial needs as well as the defendant's financial circumstances. Based on the testimony of the plaintiff regarding the untimeliness of the pendente lite payments, the alimony order will be secured through an immediate wage execution.
After considering all the evidence presented at trial, oral testimony and exhibits, evaluating the credibility of witnesses and applying the statutory criteria of General Statutes §§ 46b-81 and 46b-82, the court enters the following orders:
1) A decree may enter dissolving the marriage on the grounds of irretrievable breakdown.
2) The defendant shall transfer all of his right, title and interest in the real property at 12 Church Street, Roxbury, Connecticut. The plaintiff shall assume and hold the defendant harmless from any and all obligations relating to the property.
3) The defendant shall pay the plaintiff $1,000.00 weekly as periodic alimony until January 1, 2005, or until her death, remarriage, or cohabitation pursuant to General Statutes § 46b-86(b), whichever shall first occur. This order shall be secured through an immediate wage execution.
4) All tangible personal property owned by either party prior to the marriage shall remain his or her sole and exclusive property. All other household goods, furniture and furnishings shall be divided by the parties to their mutual satisfaction. If the parties are unable to agree on such division, the parties shall return to court for a determination on this issue.
5) The defendant shall transfer to the plaintiff CT Page 16404 $258,134.00 from his TIAA CREF deferred compensation plan by way of a Qualified Domestic Relations Order or other appropriate means. The plaintiff shall receive the benefit of any interest earned on that amount from the date of judgment to the date of distribution. The defendant shall not withdraw or encumber any monies in his TIAA CREF deferred compensation plan until distribution to the plaintiff. The court reserves jurisdiction to effectuate the transfer of this asset.
6) Each party shall pay his or her own attorney's fees.
7) Each party shall assume and hold the other harmless from the liabilities listed on the respective financial affidavits.
8) All assets listed on the respective financial affidavits not otherwise addressed in these orders shall remain each party's free and clear of the other.
9) The defendant shall name the plaintiff as an irrevocable beneficiary on a life insurance policy with a face value of not less than $150,000.00 until his obligation to pay alimony ceases.
10) The plaintiff's former married name of Sandra Cointreau is restored to her.
DiPentima, J.